# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 18-cv-01160-REB

JEANETTE R. GRUENBERGER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed May 14, 2018, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges she is disabled as a result of degenerative disc disease of the lumbar spine, epiphora,[2] a wrist impairment, adjustment disorder, and post-traumatic stress disorder. After her application for disability insurance benefits was denied,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] An eye condition which is characterized by excessive tear production. *See* healthline, *What Causes Watering Eyes (Epiphora)?* (available at: https://www.healthline.com/health/epiphora) (last accessed June 6, 2019).

plaintiff requested a hearing before an administrative law judge. That hearing was held on February 22, 2017. At the time of this hearing, plaintiff was 53 years old. She has a high school education and past relevant work experience as a cashier and a pharmacy technician. She has not engaged in substantial gainful activity since October 18, 2013, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established plaintiff's lumbar impairment was severe, the judge concluded the severity of that impairment did not meet or equal any impairment listed in the social security regulations. Plaintiff's other alleged impairments were found to be non-severe. The ALJ found plaintiff had the residual functional capacity to perform a range of light work with certain postural restrictions. Because that conclusion did not preclude plaintiff's past relevant work as a pharmacy technician, the ALJ found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

3

steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff's primary contention on appeal is that the ALJ erred in failing to include any limitations in the residual functional capacity assessment relating to plaintiff's non-

4

severe mental impairments and obesity. In addition, she claims the ALJ failed to give proper credit to her subjective reports of pain and functional limitations. Finding no reversible error in these particulars, I affirm.

At step two of the sequential evaluation, the ALJ found plaintiff's adjustment disorder and post traumatic stress disorder were not severe impairments and imposed no more than mild limitations in any area of mental functioning measured by the so-called "paragraph B" criteria.[3] (Tr. 19-22.) *See* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Plaintiff maintains the ALJ's failure to further discuss these non-severe impairments in the context of her residual functional capacity assessment constitutes reversible error. *See* 20 C.F.R. § 404.1523(c) (ALJ must consider the combined effect of all impairments, both severe and non-severe, in assessing residual functional capacity).

I cannot agree. Of course, "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any [non-severe] restriction." ***Wells v. Colvin***, 727 F.3d 1061, 1065 (10th Cir. 2013). Nevertheless, the ALJ's findings at steps

---

[3] Section 12.00 of the listings describes various mental disorders. Each of the nine diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria). (Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.) A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A.

Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *See id*, § 12.04B.

5

two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations at step four.  **See Vigil v. Colvin**, 805 F.3d 1199, 1203 (10th Cir. 2015); **Manning v. Colvin**, 182 F.Supp.3d 1156, 1164 (D. Colo. 2016).  Moreover, "while the regulations obligate the ALJ to *consider* whether a claimant's severe and non-severe impairments in combination are severe, they do not require her to specifically *address* all such factors." **Manning**, 182 F.Supp.3d at 1164 (internal citations omitted; emphases in original).  The ALJ acknowledged his responsibility to consider the combined impact of all plaintiff's impairments (Tr. 16), an assertion this court credits when, as here, the record provides no reason to doubt it, **see Hackett v. Barnhart**, 395 F.3d 1168, 1173 (10th Cir. 2005); **Manning**, 182 F.Supp.3d at 1164.

Plaintiff contends the ALJ erred by relying on the opinion of the state agency psychologist, Dr. Mark Suyeishi, because he did not have access to the medical evidence post-dating his opinion.  (**See** Tr. 21, 111.)  The ALJ, however, did consider this later-developed evidence.  Indeed, the ALJ's determination – contrary to the opinion of Dr. Suyeishi – that plaintiff suffered from determinable mental impairments, albeit not severe, shows just that.  Moreover, because the residual functional capacity assessment is not a medical determination but an administrative one, **see** 20 C.F.R. § 404.1546(c); **Lumpkin v. Colvin**, 112 F.Supp.3d 1169, 1173 (D. Colo. 2015), the ALJ was within his purview to evaluate Dr. Suyeishi's opinion in the context of the record as a whole, **see Lopez v. Barnhart**, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006).  **See also** 20 C.F.R. § 404.1527(c)(3) (supportability of medical source opinion proper consideration in determining weight it should be given).

That record amply supports the ALJ's decision not to include mental limitations in his residual functional capacity determination. Plaintiff's mental impairments stem from an incident in March 2013, in which she was robbed at gunpoint while working at a gas station. Immediately after the incident, her employer referred her for evaluation to Dr. Ted Villavicencio, a doctor of occupational medicine, who in turn referred her to Dr. John Disorbio, a licensed clinical psychologist. Initially, plaintiff reported anxiety and "moderate physical symptoms – HA,[4] sleep dysfunction" (Tr. 406), and was assessed a GAF score of 55 (Tr. 422), indicating "moderate symptoms...or moderate difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (Text Revision 4th ed. 2000) ["DSM–IV"].[5] Despite "residual issues" with anxiety, plaintiff made slow but notable progress over her course of treatment with Dr. Disorbio. (Tr. 409-410, 413, 415, 417.) Dr. Villavicencio released her from his care on May 21, 2013, finding she had reached maximum medical improvement and endorsing "[n]o impairment or permanent restrictions." (Tr. 392.) Dr. Disorbio likewise imposed no restrictions and discharged plaintiff from care in July 2013 after ten sessions, noting plaintiff "made very good progress." (Tr. 408.)

---

[4] I infer, based on other medical evidence in the record, that "HA" refers to hyper-awareness, or perhaps heightened awareness. (*See, e.g.*, Tr. 423 (describing plaintiff as "hypervigilant" following the robbery).)

[5] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" **Langley v. Barnhart**, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (quoting DSM–IV). The fifth edition of the DSM eliminated the GAF scale. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 16 (5th ed. 2014). Nevertheless, "[a]fter the DSM-V was published, the Social Security Administration issued a directive to its ALJs . . . instructing them to still consider GAF scores as medical opinion evidence but emphasizing that GAF scores should not be considered in isolation." **Sizemore v. Berryhill**, 878 F.3d 72, 82 (4th Cir. 2017).

7

Thereafter, plaintiff did not seek mental health treatment again for more than two years. Then, beginning in August 2015, she ran through a series of counselors, abandoning treatment after a few sessions because she felt her therapists were "controlling" or "intrusive" for encouraging her to confront her traumatic experiences, even though every counselor she saw recommended she do so. (*See* Tr. 409, 411, 412, 415, 565, 569, 576.) The ALJ specifically noted plaintiff's resistance to setting treatment goals or following treatment protocols.[6] (Tr. 20.) *See Miller v. Astrue*, 496 Fed. Appx. 853, 858 (10th Cir. Sept. 18, 2012) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)) (failure to follow prescribed treatment may be considered in evaluating validity of alleged impairment). The ALJ also noted that, despite plaintiff's lack of progress in therapy, her counselor assessed a GAF score of 69, indicating only mild symptoms. (Tr. 20, 580.) *See* DSM–IV at 32 (GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well"). All these considerations substantiate the ALJ's decision to omit mental limitations from plaintiff's residual functional capacity assessment.[7]

Nor did the ALJ err in failing to adopt the opinion of an independent medical examiner, psychiatrist Dr. Kenneth Krause, that plaintiff had moderate difficulty in

---

[6] That conclusion is amply supported on the record. For example, despite seeking out therapy, plaintiff told her counselor she did not want advice. (Tr. 584.) She told one therapist she would prefer if the therapist "remained silent during their sessions." (Tr. 576.) She told a subsequent counselor she did not like the previous therapist "because she wears skirts and dresses" and because the furniture at her office "is too nice." Indeed, plaintiff reportedly did "'not like' a lot of therapists" because they were "too nice or too young." (Tr. 584.)

[7] Plaintiff also suggests the ALJ erred in finding her capable of performing her past relevant work as a pharmacy tech because that position was semi-skilled. This argument supposes – wrongly – that the ALJ found plaintiff capable only of unskilled work. The residual functional capacity assessment includes no such limitation.

8

interpersonal relationships with men based on a history of abusive relationships.[8]  (Tr. 428-429.)  Plaintiff maintains, based on that statement, she should have been limited to occasional workplace interactions and claims this error is not harmless because the vocational expert testified at the hearing that such a limitation would erode the occupational base for the pharmacy technician job by fifty percent.  (*See* Tr. 69.)

     I am unpersuaded, for at least two reasons.  First, the medical evidence of record recounted above does not support such a limitation.  Second, erosion of the occupational base is not a consideration when a claimant is found capable of performing her past relevant work at step four of the sequential evaluation.  ***Nguyen v. Colvin***, 2015 WL 148667 at *12 (D. Colo. Jan. 12, 2015).  Such information is relevant only at step five, where erosion of the occupational based may impact the determination whether alternative jobs exist in significant numbers in the national and local economies.  *See **Garver v. Astrue***, 2011 WL 1134721 at *16-17 (D. Colo. March 28, 2011) (citing **Social Security Ruling** 83-12, 1983 WL 31253 at *2 (SSA 1983)).  By contrast, if the ALJ determines a claimant has the residual functional capacity to do her past relevant work, he does "not consider . . . whether [her] past relevant work exists in significant numbers in the national economy."  20 C.F.R. § 404.1506(b)(3).  ***See also Hinds v. Berryhill***, 2017 WL 876264 at *4 (D. Utah March 3, 2017) ("A claimant's RFC is the sole consideration in determining whether he can perform his past relevant work[.]").  There thus was no error in this regard either.

---

[8] I assume *arguendo* this statement can be read to support a broader conclusion that plaintiff has difficulties interacting with supervisors, coworkers, and/or the public in a work setting.

Plaintiff further alleges error in the ALJ's failure to acknowledge her obesity or address it in fashioning his residual functional capacity assessment. The medical evidence repeatedly notes plaintiff had a Body Mass Index ("BMI") of 30 or above (*see* Tr. 319, 322, 326, 329, 334, 360, 366, 524, 527), which is considered obese.[9] *See* Centers for Disease Control and Prevention, Overweight & Obesity, *Defining Adult Overweight and Obesity, Adult Body Mass Index (BMI)* (available at: https://www.cdc.gov/obesity/adult/defining. html) (last accessed June 6, 2019). Although no longer a separately listed impairment, obesity still must be considered insofar as it impacts other impairments of the musculoskeletal, respiratory, and cardiovascular systems. **Social Security Ruling** 02-1p, 2002 WL 34686281 at *1 (SSA Sept. 12, 2002). Nevertheless, "there is no requirement that [obesity] be discussed in a particular manner or at a particular time in a disability decision[;] the ALJ is required only to consider it." ***Medina v. Berryhill***, 2017 WL 1862279 at *10 (D. Colo. May 8, 2017) (citation and internal quotation marks omitted).

Here, the medical expert who testified at the hearing, Dr. Joseph Gaita, explicitly considered plaintiff's weight in endorsing various postural limitations, (Tr. 42), which the ALJ adopted in his residual functional capacity determination (Tr. 23, 28-29). Moreover, the ALJ's opinion is replete with references to the largely unremarkable objective medical evidence of plaintiff's physical impairments. (Tr. 25-29.) Plaintiff points to

---

[9] Although plaintiff has never received a diagnosis of obesity, which is typically a minimum prerequisite to finding that an impairment constitutes a medically determinable impairment, *see* 20 C.F.R. § 404.1527(a)(1); ***Galloway v. Astrue***, 2012 WL 1019167\ at *3 (D. Colo. Mar. 26, 2012), the ALJ typically will "use [his] judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity," **Social Security Ruling** 02-1p, 2002 WL 34686281 at *3 (SSA Sept. 12, 2002).

10

nothing in this recitation, or in the evidence itself, suggesting her weight imposes any greater restrictions on her ability to work than those found by the ALJ. The Tenth Circuit has rejected any suggestion that "in formulating [a residual functional capacity] . . . [the ALJ is] also required to note the absence of any evidence that [plaintiff's] obesity resulted in additional functional limitations or exacerbated any other impairment," **Smith v. Colvin**, 625 Fed. Appx. 896, 899 (10th Cir. Sept. 14, 2015), and in similar circumstances, courts in this circuit routinely have refused to remand, **see Galvez v. Berryhill**, – F.Supp.3d –, 2019 WL 2121291 at *3 (D. Colo. May 15, 2019) (citing cases).[10] Therefore, any error in his failure to discuss the effects of plaintiff's obesity more explicitly was harmless. **Williams v. Chater**, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); **Lumpkin**, 112 F.Supp.3d at 1174.

Lastly, plaintiff maintains the ALJ erred in discrediting her subjective complaints of pain and functional limitation. This argument is woefully underdeveloped, saying little more than that plaintiff suffers from impairments capable of causing pain. (**See Plf. Br.** at 16-17.) The failure to adequately develop an argument creates no obligation on the part of the court to consider it. **Manning**, 182 F.Supp.2d at 1162 n.5. Moreover, as framed, plaintiff's argument assumes what it would seek to prove – that her allegations of pain are, in fact, credible.

---

[10] For the same reason, I reject plaintiff's suggestion that her obesity may have effected her mental abilities. **See Social Security Ruling** 02-1p, 2002 WL 34686281 at *3 (while "[o]besity may also cause or contribute to mental impairments such as depression" or or cause "loss of mental clarity and slowed reactions [as] result [of] obesity-related sleep apnea," "[t]he fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments"). Plaintiff has adduced no evidence to suggest her obesity contributes or exacerbates her mental impairments.

Nevertheless, I perceive nothing in the ALJ's discussion of this issue which warrants remand. In general, "credibility determinations 'are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." ***White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) (citing ***Kepler v. Chater***, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ expressly links his credibility assessment to specific evidence in the record, his conclusion should not be disturbed. ***Id.*** at 910; *see also **Qualls v. Apfel***, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ followed that mandate here. He thoroughly recounted the objective medical evidence related to plaintiff's physical impairments. (Tr. 26-29.) *See **Abdelmeged v. Colvin***, 2015 WL 5047645 at *5 (D. Colo. Aug. 26, 2015) (citing ***Luna v. Bowen***, 834 F.2d 161, 165 (10th Cir. 1987)) (lack of objective medical evidence may considered as bearing on credibility). As the ALJ noted, plaintiff's physical examinations consistently reported her has having normal motor strength, normal gait and movement of all extremities, intact sensation, normal reflexes, little to no tenderness to palpation, and no neurological deficits. Diagnostic imagining showed plaintiff's back condition was mild to moderate and stable over time, including a significant period of time in which she continued to work. Dr. Gaita testified plaintiff's more recent complaints of wrist pain did not support the inclusion of manipulative limitations in her residual functional capacity, and noted such complaints were eminently treatable. (Tr. 42, 44.)

Thus, while plaintiff does suffer from conditions capable of producing pain, there is substantial evidence that their impact on her functioning is less significant than plaintiff alleges. *See **Brown v. Bowen***, 801 F.2d 361, 362-63 (10th Cir. 1986)

("[D]isability requires more than mere inability to work without pain.") (citation and internal quotation marks omitted). **See also Qantu v. Barnhart**, 72 Fed. Appx. 807, 811 (10th Cir. Aug. 13, 2003); **Manning**, 182 F.Supp.3d at 1163. As all the ALJ's findings in this regard are supported by specific citation to the evidence of record, nothing in this determination warrants remand, either.

## IV. ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated June 10, 2019, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge